UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                  :

NEW YORK PROGRESS AND
PROTECTION PAC,

                Plaintiff,            :          13 Civ. 6769 (PAC)

     -against-                   :          OPINION & ORDER

JAMES E. WALSH, ET AL.,

               Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 17, 2013

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiff New York Progress and Protection PAC ("NYPPP"), an independent expenditure-only, unauthorized political committee, desires to solicit and accept contributions in excess of the applicable statutory limitations set forth in N.Y. Elec. Law §§ 14-114(8) and 14-126.  NYPPP intends to use these funds to expressly advocate for the Republican candidate for New York City mayor in the November 5, 2013 election and to oppose the Democratic candidate.  Although not a plaintiff in this action, the Complaint identifies Shaun McCutcheon, a businessman from Alabama and a long-time supporter of the Republican Party, as a person who wishes to support the Republican candidate for mayor.  Mr. McCutcheon is willing to contribute $200,000 to NYPPP.  He could expend that amount as an individual, but he chooses not to do so.  Instead he wishes to give that amount to NYPPP but may not do so because New York's statutory limitation for individual contributions is set at $150,000.

       NYPPP submits that New York's statutory limitation on contributions to an independent expenditure-only political committee violates its rights under the First and Fourteenth

Amendments of the Constitution. It seeks a declaration to that effect and moves for a preliminary injunction against enforcement of N.Y. Elec. Law §§ 14-114(8) and 14-126 so that it may begin soliciting and accepting contributions in excess of the statutory limitation, and spending the proceeds on the New York City mayoral campaign. While Mr. McCutcheon's potential contribution is $200,000, NYPPP asserts that there is no constitutionally permissible limitation on individual contributions to an independent expenditure-only political committee.

## BACKGROUND

### I.     Statutory and Regulatory Background

New York limits the amount that an individual or entity may contribute to candidates, political parties, and political committees. Under N.Y. Elec. Law § 14-100(1), a "political committee" includes "any committee, political club or combination of one or more persons operating or co-operating . . . to aid or take part in the election or defeat of a candidate for public office . . . ." An organization is classified as an "authorized political committee" when it has been specifically authorized by the candidate to aid or take part in the election, other than by making contributions. *Id.* § 14-112. On the other hand, an organization acts as an "unauthorized political committee" when it was not authorized by a candidate to raise or spend money on his or her behalf. *See* N.Y.S. Board of Elections, *Are You a Committee?*, http://www.elections.ny.gov/CFCommittees.html#Other (last visited Oct. 16, 2013).

Under N.Y. Elec. Law § 14-114(8), no individual "may contribute, loan or guarantee in excess of one hundred fifty thousand dollars within the state in connection with the nomination or election of persons to state and local public offices . . . in any one calendar year." Similarly, a political committee is barred from accepting contributions from individuals in excess of this $150,000 aggregate limit. *Id.* § 14-126(2). A "contribution" is defined, in part, as:

2

>     any payment, by any person other than a candidate or a political committee authorized by the candidate, made in connection with the nomination for election or election of any candidate, or any payment made to promote the success or defeat of a political party or principle, or of any ballot proposal . . . .

*Id.* § 14-100(9)(3). In contrast, contributions to candidates and authorized committees are subject to the more restrictive limits set forth in § 14-114(1).

There is no statutory definition for the term "independent expenditure," but the New York Board of Elections interprets it to mean "the direct payment for goods or services" by an individual or political committee in connection with an election. *See* N.Y.S. Board of Elections 1981 Opinion No. 5 (July 27, 1981). According to the New York State Board of Elections, § 14-114 allows for "unlimited independent expenditures by persons or political committees." N.Y.S. Board of Elections 1994 Opinion No. 3 (Apr. 25, 1994). Contributions to political committees that make only independent expenditures are limited, however, to $150,000 per individual per year. *Id.*

## II.   The Parties

Plaintiff NYPPP is registered as a "Type 9," unauthorized political committee with the New York State Board of Elections and as a "political organization" under Section 527 of the Internal Revenue Code. Declaration of Craig Engle ("Engle Decl.") ¶¶ 13, 3.[1] As a result, NYPPP describes itself as an "independent expenditure-only" political committee that does not coordinate with any candidate or campaign. Engle Decl. ¶¶ 12-13. Craig Engle formed the organization to assist the Republican candidate for New York City Mayor, Joe Lhota. Engle Decl. ¶ 5. Mr. Engle believed Mr. Lhota lacked the name recognition and campaign funds

---

[1] "Mr. Engle is an experienced political operative with connections to numerous large donors." Compl. ¶ 28. He makes "all decisions for NYPPP concerning the solicitation, acceptance, and use of funds." Compl. ¶ 31. Mr. Engle is affiliated with a Washington law firm. Declaration of William J. McCann, Jr., Exs. A-B. NYPPP has only a mail drop in New York City. Hr'g Tr. 21:1-4.

possessed by his Democratic opponent, and he sought to remedy this disparity through creation of NYPPP.  Engle Decl. ¶ 5.

While not a plaintiff, Shaun McCutcheon, who lives in Birmingham, Alabama, claims to be a supporter of the Republican Party.  Declaration of Shaun McCutcheon ("McCutcheon Decl.") ¶¶ 2-3.  Mr. McCutcheon is apparently one of the "numerous large donors" to whom Mr. Engle has access.  Compl. ¶ 28.[2]  Sometime between September 22 and 24, 2013, Mr. Engle obtained Mr. McCutcheon's agreement to contribute at least $200,000 to NYPPP, so that the organization could make independent expenditures advocating Mr. Lhota's candidacy.  Engle Decl. ¶ 20.  The contribution was contingent on the contribution limitation being enjoined.  Engle Decl. ¶ 20.  There is no limitation on what Mr. McCutcheon can spend as an individual but he claims that he has neither the time nor experience to produce and distribute his political views in New York.  McCutcheon Decl. ¶ 6.  He concludes that he needs organizations like NYPPP to effectively disseminate his viewpoint.  McCutcheon Decl. ¶ 6.

Defendants James A. Walsh, Douglas A. Kellner, Evelyn J. Aquila, and Gregory P. Peterson ("State Defendants") are Commissioners of the New York State Board of Elections. NYPPP sues State Defendants in their official capacities.  The New York Attorney General represents the State Defendants and also intervenes to defend the constitutionality of the statute. *See* Letter from Judith Vale to the Hon. Paul A. Crotty, Oct. 7, 2013, at 1.  All parties consented

---

[2] McCutcheon is also challenging two FEC aggregate contribution limits in a case pending before the Supreme Court.  An individual may only contribute a biennial total of (1) $48,600 to candidate committees and (2) $74,600 to all other committees, of which no more than $48,600 may go to non-national party committees.  2 U.S.C. 441a(a)(3).  In this biennium, McCutcheon has donated a total of $33,088 to candidate committees but wishes to donate an additional $21,312.  Brief for Appellant Shaun McCutcheon at 11-12, *McCutcheon v. Federal Election Commission*, No. 12-356 (U.S. May 6, 2013).  There, as here, Mr. McCutcheon wants to spend more than the statutory limits on contribution allow.

to the New York Attorney General's intervention at oral arguments on October 8, 2013. *See* Hr'g Tr. 3:22-4:5.

Defendants the Board of Elections in the City of New York, Frederic M. Umane, Gregory C. Soumas, Jose Miguel Araujo, Naomi Barrera, Julie Dent, Maria R. Guastella, Michael Michel, Simon Shamoun, and J.P. Sipp ("City Defendants") are also parties to this action. NYPPP sues the individual City Defendants in their official capacities as Commissioners of the Board of Elections in the City of New York.[3]

## III.   The Arguments Presented

NYPPP acknowledges that contributions to candidates or authorized committees can be limited by law. *See* Plaintiff's Memorandum of Law in Support of Preliminary Injunction ("Pl.'s Br.") at 2; *see also Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam); *Ognibene v. Parkes*, 671 F.3d 174 (2d Cir. 2011). But NYPPP asserts that it is an independent expenditure-only, non-authorized political committee and therefore does not and will not coordinate with any candidate. Under the election law, there is no limitation on the amount of money it may expend. *See* Pl.'s Br. at 1-2. Similarly, Mr. McCutcheon can spend whatever he wishes, so long as he acts independently of a candidate or authorized committee. *See* Pl.'s Br. at 1-2.

NYPPP presents the following syllogism in support of its position that it is entitled to receive unlimited contributions from a single donor. New York cannot restrict NYPPP's independent expenditures. *See* Pl.'s Br. at 1-2. And New York cannot restrict Mr. McCutcheon's independent expenditures. *See* Pl.'s Br. at 1-2. Based on these premises, NYPPP concludes that New York cannot restrict Mr. McCutcheon's contributions to NYPPP to engage

---

[3] City Defendants maintain that they are strangers to this controversy and consequently take no position. *See* Letter from Martin Bowe to the Hon. Paul A. Crotty, Sept. 26, 2013, at 1. NYPPP argues that the Board of Elections in the City of New York is empowered to enforce State law, and if only State Defendants are enjoined, the City Defendants may still enforce the statutory restrictions. *See* Hr'g Tr. 21:8-14.

in independent expenditures.  *See* Pl.'s Br. at 1-2.  While the conclusion does not flow from the premises, NYPPP argues that it is its statutory right to engage in unlimited independent spending, and Mr. McCutcheon's right to unlimited, individual independent expenditures means that he can give to NYPPP in unlimited amounts.  *See* Pl.'s Br. at 1-2.  While connections to candidates and their authorized committees raise the specter of *quid pro quo* corruption, NYPPP maintains that such evil does not exist with contributions to independent committees, even one which intends to engage in express advocacy for a single candidate in a single election.  *See* Pl.'s Br. at 1-2.  NYPPP claims that there is "universal agreement" among all courts who have considered this constitutional issue.  Pl.'s Br. at 14.  Most of these cases, however, did not arise in the context of a motion for preliminary injunction.

      State Defendants attempt to maintain the distinction between contributions and expenditures set forth in *Buckley*.  *See* State Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Defs.' Opp'n Br.") at 2-3.  But this distinction does not clarify or resolve the issue here:  whether a contribution to an independent expenditure-only organization implicates the same First Amendment rights and government concerns as a contribution to a candidate.

## DISCUSSION

### I.    Legal Standard

      "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  The party seeking the injunction "must show a

'clear' or 'substantial' likelihood of success where the injunction sought is mandatory—i.e., it will alter, rather than maintain, the status quo." *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir. 2004). There is no doubt that NYPPP seeks to alter the status quo by preventing the State from enforcing a duly enacted statute, and so it is required to show a substantial likelihood of success on the merits. *See County of Nassau v. Leavitt,* 524 F.3d 408, 414 (2d Cir. 2008) (applying more rigorous "substantial likelihood of success on the merits" standard where county challenged interpretation of new law by Department of Health and Human Services); *Wright v. Giuliani,* 230 F.3d 543, 547 (2d Cir. 2000) (applying higher standard for injunction where plaintiffs challenged the adequacy of emergency housing administered by the New York City Human Resources Administration).

## II.  Analysis

"The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Financing Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)) (internal quotations omitted). Since the State Defendants represent the public, there are important public interests at stake, which must be weighed against the hardships suffered by NYPPP if an injunction is not granted. This Court may exercise its discretion to grant this "extraordinary and drastic remedy," only if NYPPP has demonstrated that the balance of hardships decidedly tips in its favor. *See Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005).

The public interest strongly weighs against issuance of a preliminary injunction in this case. For any preliminary injunction, "the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80

(2d Cir. 2010) (quoting *eBay Inc. v. MercExchange*, *L.L.C.*, 547 U.S. 388, 391 (2006)). In particular, the Supreme Court has directed lower courts to act with caution when altering election laws close to an election date. *See Reynolds v. Sims*, 377 U.S. 553, 585 (1964) ("[A] court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles."). Therefore, in evaluating equitable relief, courts often consider "the harm to the public interest from the chaos that will ensue" if a longstanding election law is "invalidated by a court order in the crucial final weeks before an election." *See Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010); *see also Conservative Party of N.Y. v. N.Y. Bd. of Elections*, No. 10 Civ. 6923, 2010 WL 4455867, at *2 (S.D.N.Y. Oct. 15, 2010) (denying request for preliminary injunction based, in part, on "the obvious potential for confusion created by a change that would have to be made on such short notice . . . and the simple fact that plaintiffs waited until six weeks before the election to file their complaint").

Similarly, a court may consider the impact the timing of a motion has on its ability to analyze the constitutional question presented. Courts recognize that "[t]he greatest public interest must attach to adjudicating the[] claims fairly—and correctly." *Favors v. Cuomo*, 881 F. Supp. 2d 356, 371 (E.D.N.Y. 2012). Rather than rushing to judgment at the expense of thorough analysis in cases impacting public discourse and the political process, "the courts have an independent institutional interest in ensuring that matters are presented to them in a timely manner so that they may receive the careful consideration they deserve." *Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 340 n.36 (S.D.N.Y. 1998); *see also Manhattan State Citizens' Grp., Inc. v. Bass*, 524 F. Supp. 1270, 1276 (S.D.N.Y. 1981) ("It is an unfair imposition on the defendants and on the Court to force an unnecessarily hasty decision on such an important

question of constitutional law."). Development of a factual record may be necessary for a court to determine the constitutionality of a statute and therefore may counsel against the issuance of a preliminary injunction. *See Mental Hygiene Legal Serv. v. Spitzer*, No. 07 Civ. 2935, 2007 WL 4115936, at *11 (S.D.N.Y. Nov. 16, 2007).

Here, NYPPP asks this Court to rush to dismantle a law—which has remained unchanged for more than three decades—without any real factual record. The only factual record that exists now is Mr. Engle's four page affidavit, where he attests to NYPPP's independence; and Mr. McCutcheon's one page affidavit, where he states his desire to contribute $200,000 to NYPPP. Yet development of the factual record could demonstrate that so-called independent expenditure-only committees that have only one purpose—advancing a single candidacy at a single point in time—are not truly independent as a matter of law. State Defendants should be afforded the opportunity to develop this factual basis and this Court should be permitted to give fair consideration of such facts as may be developed, before deciding a constitutional issue of such importance.

Furthermore, NYPPP asks this Court to disrupt the status quo within days of an election. State Defendants contend that such a disruption would "seriously harm the public interest in a fair campaign and election and impair the Board's administration of the State's campaign finance system in this 2013 election cycle." Defs.' Opp'n Br. at 13. They assert that candidates, contributors, and political committees already relied on the existing aggregate limit in their planning and therefore will be irreparably disadvantaged. Defs.' Opp'n Br. at 14. Indeed, political candidates in primary elections across the State have already won or lost, in part, based on fundraising under the current campaign finance scheme. Furthermore, contributors may have completed their planned donations to political committees for this cycle and therefore may not

have funds available to make last minute donations.  For many donors and political committees, "starting again is not an option."  *See* Defs.' Opp'n Br. at 15.  Overall, granting the injunction would likely "disrupt the justifiable expectations of the individuals and entities that have and continue to comply with the challenged provisions of the Election Law," and this Court weighs such a disruption as significantly against the public interest.  *See Hispanic Leadership Fund, Inc. v. Walsh*, No. 1:12-cv-01337, slip op. at 28 (N.D.N.Y. Oct. 23, 2012).[4]

The Court is also concerned about the confusion this case could cause over whether an injunction would apply to other political committees.  As the Supreme Court has explained, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances *except with respect to the particular federal plaintiffs*."  *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (emphasis added).  The enjoinment of a law against nonparties is normally only appropriate when an action is brought on behalf of a class.  *See Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2760 (2010).[5]  As a result, there is uncertainty among lower courts regarding whether an injunction can extend to organizations or individuals that are not parties to a case.  *Compare Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that "the district court abused its discretion in enjoining the rules themselves as opposed to enjoining their enforcement as to the plaintiffs before him"), *with Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011) (stating that an

---

[4] Less persuasively, State Defendants contend that "a significant change to the rules now would frustrate the State Board's ability to ensure compliance with statewide elections."  Defs.' Opp'n Br. 13.  True, a rule change would create the "potential for confusion."  *See Conservative Party of N.Y. State*, 2010 WL 4455867, at *7.  Yet the government's interest in ensuring the accuracy of brochures and other educational materials, *see* Defs.' Opp'n Br. at 14, is a relatively minor consideration.

[5] One possible exception to this rule is triggered where a plaintiff brings a facial challenge to a law.  *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477-78 (1995) ("[A]lthough the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants.").

injunction would apply to non-parties "as long as the group is specified").[6] Because Plaintiff brings this challenge as applied to independent expenditure-only organizations and solely on behalf of NYPPP, this Court may lack the authority to order enjoinment of the statute beyond the parties to this case.

Even more troubling is the distinct possibility that an injunction would amplify NYPPP's voice over the voices of other political committees. If an injunction were issued in this case, the "State is [still] free to prosecute others who may violate the statute." *See Doran*, 422 U.S. at 931. Because nonmutual offensive issue preclusion generally does not apply against the government, any resolution of issues against the government is not binding in cases involving other parties. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984); *Right to Life of Dutchess Cnty., Inc. v. Fed. Election Comm'n*, 6 F. Supp. 2d 248, 253 (S.D.N.Y. 1998). Indeed, State Defendants acknowledge that other courts would be free to rule differently on this issue. *See* Hr'g Tr. 33:6-11; *see also* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1340 (2000) ("[E]ven if the district court purported to hold the statute invalid on its face, its holding would not bind other federal district courts in cases involving other parties.").[7] Under this scenario, political committees would be forced to make an impossible choice: accept unlimited contributions and risk prosecution or sit by idly and watch NYPPP pour money into the race. Rather than offering "more information from more viewpoints," *see* Pl.'s Br. at 19, an injunction may simply offer more information from NYPPP.

---

[6] At oral argument, Plaintiff's counsel argued that "it's bedrock Supreme Court law" that "if a person goes in and says I have standing to challenge the Affordable Care Act, and the Court strikes it down for that plaintiff, it's not as if the Act will operate with respect to every other plaintiff." Hr'g Tr. 18:9-13. But at least one district court that declared that law unconstitutional held to the contrary. *See Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 2d 1307, 1316, 1318 (N.D. Fla. 2011) ("[M]y declaratory judgment, of course, only applies to the parties to this litigation.").

[7] Notably, Mr. McCutcheon is not a party to this action and therefore would not be protected by an enjoinment of the statute. Mr. McCutcheon would still be exposed to criminal prosecution by the State if he were to contribute in excess of $150,000 to NYPPP.

On the other hand, NYPPP asserts that a preliminary injunction would advance the public interest because it advances its free speech rights.  *See* Pl.'s Br. at 18-19.  While the public interest ordinarily is "not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional," *see Am. Civil Liberties Union v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) *cert. denied,* 133 S. Ct. 651 (U.S. 2012), the facts presented to this Court are anything but ordinary.  New Yorkers go to the polls in less than a month.  Overall, an issuance of an injunction would disrupt rules that have been relied upon in this election cycle, cause confusion among political committees, and possibly elevate NYPPP's voice above others.  Accordingly, this Court finds that a preliminary injunction would seriously undermine the public's interest in a fair and predictable election process.

In weighing these hardships against the hardships facing NYPPP, this Court is mindful of NYPPP's attempt to create an artificial urgency.  NYPPP waited until September 25, 2013, just over forty-one days before the November 5 New York City mayoral election, before filing its complaint.  While the Court recognizes that the occasion of this lawsuit is the current mayoral race, the law being attacked is more than 30 years old, and the attack is based on a four-year-old Supreme Court decision.  *See Respect Maine PAC*, 622 F.3d at 16 (rejecting plaintiff's justification for delay based on *Citizens United* because the case law was "not new"); *Hispanic Leadership Fund, Inc.*, slip op. at 23-27 (rejecting plaintiffs' justification for delay based on cases interpreting *Citizens United* because this case law merely reinforced *Citizens United*'s holding).

Plaintiff claims that the candidate it now wishes to support was not expected to win the primary and so the thought did not occur to NYPPP's founder sooner.  *See* Plaintiff's Reply in

Support of Motion for Preliminary Injunction ("Pl.'s Reply Br.") at 8-9.[8]  But that made-up explanation is so at variance with what actually occurred that it calls into question NYPPP's other factual assertions.  And even if the statements were accurate, the pace of Mr. Engle and NYPPP's thought process cannot justify a hasty rush to judgment.  New York has experienced four elections since *Citizens United*, each of which has featured one or more Republican and/or conservative candidates who were underfunded and accordingly unknown.  These are the same factors that Mr. Engle and Mr. McCutcheon claim compel immediate action here.  In fact, the lawsuit could have been brought at any time.  Indeed, an almost identical action was brought in the Northern District of New York last year.  *See generally Hispanic Leadership Fund, Inc.*, slip op. (considering an emergency motion for enjoinment of several provisions of the New York State Election Law, including § 14-114(8)).

      NYPPP's claimed immediacy and need for instantaneous relief is even less compelling where the experienced political operative and his large donor could have initiated the action much sooner.  Here, Mr. Engle is "an experienced attorney specializing in political law," Engle Decl. ¶ 6, and Mr. McCutcheon is a regular supporter of Republican campaigns, McCutcheon Decl. ¶ 4.  These sophisticated individuals surely knew about New York's long-standing statutory limitation on contributions and exactly how to challenge such limitations.  Had they acted sooner, this Court would have been able to give full consideration to the numerous and complex issues involved, well in advance of the election.  Instead, NYPPP asks this Court to enjoin a statute at the eleventh hour without regard for the severe consequences that might result.

---

[8] In its September 26 letter to this Court, NYPPP's attorney stated that it "reasonably believed that John Catsimatidis was likely to win the primary, and that Mr. Catsimatidis, who is independently wealthy, would be able to match the spending of his Democratic opponent without the help of NYPPP."  Letter from Todd R. Geremia to the Hon. Paul A. Crotty, Sept. 26, 2013, at 1.

Accordingly, the magnitude of the harm to the public from an unpredictable and unjust election process far exceeds the potential hardships to NYPPP, thereby tipping the equities in favor of denying a preliminary injunction. A consideration of these factors alone requires denial of the requested injunctive relief. For that reason, the Court need not address whether NYPPP can establish a substantial likelihood of success on the merits or irreparable harm. *See Winter*, 555 U.S. at 23-24 (stating that consideration of irreparable injury and success on the merits was not necessary because both factors were outweighed by the public interest). Even if these additional factors were fulfilled, NYPPP has failed to meet its burden of establishing that an injunction would be in the public interest or that the balancing of the hardships tips in its favor. Further, this Court has no doubt that NYPPP and the public interest would be better served by the development of a full record prior to deciding the important issues raised here.

## CONCLUSION

Accordingly, NYPPP's motion for a preliminary injunction is DENIED.

While normally the Court would direct an expedited answer and discovery, the State Defendants have asked to delay their response to November 12, 2013. NYPPP's consent to this date speaks volumes about what is going on and what is motivating NYPPP's eleventh hour claim for immediate relief. NYPPP's artificial urgency is simply an attempt to avoid the rigorous scrutiny of the New York statutory scheme for campaign finance, which must occur before any relief is granted.

Dated: New York, New York
      October 17, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge