UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

NEW YORK PROGRESS AND
PROTECTION PAC,

                Plaintiff,

    -against-

JAMES A. WALSH, et al.,

                Defendants.

----------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: <u>April 24, 2014</u>

13 Civ. 6769 (PAC)

**<u>OPINION & ORDER</u>**

HONORABLE PAUL A. CROTTY, United States District Judge:

    In democracies, there have to be campaigns for office—and you cannot campaign without money.  "Unless only the rich are to run, the money must be raised."  John T. Noonan, Jr., Bribes 621 (1984).  There are choices in how the money is raised.  New York City is a leader in public financing of campaigns; but it has not been without its problems.  If money is to be raised, it has to come from supporters—or people who agree with the candidate.  It is possible that money is given due to family relationships or friendships, or by public spirited souls who believe that campaigns are good and therefore should be supported.  But those few instances aside, money is normally contributed in the hope—indeed the expectation—that the contribution will affect the candidate's votes or actions.  That expectancy creates an implied promise to be fulfilled by the candidate once in office.

    Consider some examples.  First, there is the donor who gives to the candidate because the candidate is a war hero, who is bright, personable, and just the right person given the political climate and the political situation.  The donor does not know the candidate, is affiliated with a different party, works in an unregulated industry, and does no business with the entity holding

the election.  Contrast that with a donor who wants access—perhaps an appointment to a special committee, or an overnight stay at the executive mansion.  Or there is the donor who gives to the candidate because he expects the candidate to vote in a particular way on a particular issue.

When does the act of contributing to a candidate become an attempt at "corrupt" influence?  And whenever and however can that line be drawn?  One thing is certain:  large political donations do not inspire confidence that the government in a representative democracy will do the right thing.  As Justice Breyer noted in his dissenting opinion in *McCutcheon v. FEC*, "Corruption breaks the constitutionally necessary 'chain of communication' between the people and their representatives. . . . Where enough money calls the tune, the general public will not be heard."  134 S. Ct. 1434, 1467 (2014) (Breyer, J., dissenting).  In other words, he who pays the piper calls the tune.

Indeed, today's reality is that the voices of "we the people" are too often drowned out by the few who have great resources.  And when the fundraising cycle slows (it never stops), lobbyists take over in a continuing attempt to gain influence over and access to elected officials.  This is not a left or right, liberal or conservative analysis, but all the points on the political spectrum are increasingly involved in shaping this country's political agenda.  In today's never-ending cycle of campaigning and lobbying; lobbying and campaigning, elected officials know where their money is coming from and that it must keep coming if they are to stay in office.  Ordinary citizens recognize this; they know what is going on; they know they are not being included.  It breeds cynicism and distrust.

Yet this is not to say that all influence that people seek is corrupt.  There is a "difference between influence resting upon public opinion and influence bought by money alone." *McCutcheon*, 134 S. Ct. at 1481 (Breyer, J., dissenting).  Influence resting upon public opinion is

a vital aspect of our representative democracy.  On the other hand, influence bought by money is

no different than a bribe, and as the Book of Exodus 23:8 counsels, "a bribe blinds the clear-

sighted and is the ruin of the just man's cause."  But without knowing what is in a politician's or

donor's mind, it is almost impossible to know where to draw the line.  Legislators are well

acquainted with these dangers.  Based on their experiences, legislators have drawn the line by

crafting contribution limitations like those contained in New York Election Laws §§ 14-114(8)

and 14-126.

Our Supreme Court has made clear that only certain contribution limits comport with the

First Amendment.  Since contributing money is a form of speech, preventing *quid pro quo*

corruption or its appearance is the only governmental interest strong enough to justify

restrictions on political speech.  *Citizens United v. FEC*, 558 U.S. 310, 357-61 (2010).  More

recently in *McCutcheon*, the Court concluded that "the possibility that an individual who spends

large sums may garner influence over or access to elected officials or political parties . . . does

not give rise to such *quid pro quo* corruption."  *Id*. at 1438.  In effect, it is only direct bribery—

not influence—that the Court views as crossing the line into *quid pro quo* corruption.  The Court

agrees with Justice Breyer.  He said that, "[t]his critically important definition of 'corruption' is

inconsistent with the Court's prior case law."  *McCutcheon*, 134 S. Ct. at 1466 (Breyer, J.,

dissenting).  But this Court is bound to apply this definition "no matter how misguided . . . [the

Court] may think it to be."  *Hutto v. Davis*, 454 U.S. 370, 375 (1982).

Here, the Defendants claim that unlimited contributions to independent expenditure-only

PACs create the risk of corruption.  According to Defendants, "many political committees are so

closely affiliated with candidates—including being operated by the candidate's close friends,

former employees, and other allies—that they function in effect as extensions of candidates' own

operations." *See* Letter from Brian A. Sutherland to the Hon. Paul A. Crotty, April 22, 2014, ECF No. 67, at 2.  In support, Defendants identify a number of personal and professional relationships between individuals at Jamestown Associates, the political consulting firm that produced NYPPP's campaign ads, and individuals associated with Mr. Lhota, the 2013 Republican candidate for New York City mayor.  State Defendants' Rule 56.1 Statement, ECF No. 54, ¶¶ 6-7.  But these tenuous connections hardly rise to the level of coordination—and certainly not to the level of *quid pro quo* corruption articulated by *Citizens United* and *McCutcheon*.[1]  In fact, such relationships are inherent in politics and in any political campaign. As a result, Defendants fail to raise a genuine issue of material fact as to whether NYPPP is truly an independent PAC.

Once it is determined that NYPPP is an independent expenditure-only organization, there is little left for the Court to do.  The Court must apply the Supreme Court's binding decisions. You may recall that in October, the Court denied the preliminary injunction.  That decision was reversed by the Second Circuit—well before the Supreme Court's *McCutcheon* decision.  While the Second Circuit stated that it was not analyzing the merits, it clearly directed the Court to strike down the limit on contributions to independent PACs.  *See New York Progress and Protection PAC v. Walsh*, 733 F.3d 483, 487 n.1 (2d Cir. 2013) ("[P]reventing *quid pro quo* corruption is the only government interest strong enough to justify restrictions on political speech, and the threat of *quid pro quo* corruption does not arise when individuals make contributions to groups that engage in independent spending on political speech.").  Indeed, the Second Circuit's opinion has been interpreted by other circuits to do just that.  *See Republican*

---

[1] During oral argument, Defendants conceded that these relationships do not rise to the level of corruption.  Instead, Defendants claimed that independent expenditure-only organizations may coordinate with campaigns and cited political science studies in support.  But such evidence means that those PACs are not truly independent, which cannot be said for NYPPP.

*Party of New Mexico v. King*, 741 F.3d 1089, 1096 (10th Cir. 2013) (characterizing the Second

Circuit as having "stuck down contribution limits to independent expenditure groups").

Furthermore, in *McCutcheon*, the Supreme Court noted that the "base and aggregate limits

govern contributions to traditional PACs, but not to independent expenditure PACs." 134 S. Ct.

at 1442 n.2.  In making this distinction, the Court cited favorably to *SpeechNow.org v. FEC*,

where an en banc panel of the D.C. Circuit unanimously held that the government has no anti-

corruption interest in limiting contributions to an independent expenditure group. *See*

*SpeechNow.org*, 599 F.3d 686, 695-96 (D.C. Cir. 2010) (en banc).  Defendants attempt to limit

*SpeechNow*, but just as the First Amendment was applied to that case, the same First

Amendment, applied here to the State law, must yield the same result.

     The Court has noted its concern; and many others have expressed similar concerns about

the impact of the rulings in *Citizens United* and *McCutcheon*.  The Court is bound, however, to

follow the Supreme Court and Second Circuit's clear guidance.  Accordingly, the Court holds

that the limitations contained in New York Election Laws §§ 14-114(8) and 14-126, as applied to

independent expenditure-only organizations, cannot prevent *quid pro quo* corruption or its

appearance, and thus violate the First Amendment.  The Court therefore enjoins Defendants from

applying and enforcing New York Election Laws §§ 14-114(8) and 14-126 against NYPPP and

its individual donors only for independent expenditures.

     NYPPP's motion for summary judgment is GRANTED.

Dated:  New York, New York
      April 24, 2014

                       SO ORDERED

                       _____
                       PAUL A. CROTTY
                       United States District Judge